MADDOX, Justice.
This is a workers’ compensation case brought by the widow and children of an employee who died of lung cancer that the plaintiffs allege was caused by exposure to an occupational hazard. The issues presented by this case are: (1) whether the trial court made sufficient findings of fact to support its judgment denying workers’ compensation benefits; and (2) whether that court applied the proper criteria for determining medical causation.
Steven Valdez died of lung cancer on December 1, 1988. Mr. Valdez had been an industrial painter, coater, and sandblaster employed by the defendant, Pen Gulf, Inc., from 1986 until January 1988. After leaving Pen Gulf, Mr. Valdez worked for another company until April 1988. In the fall of 1987, while working for Pen Gulf, Mr. Valdez began experiencing pain in his back. He initially thought that he had injured his back, but he was later diagnosed with lung cancer in May 1988.
There was conflicting evidence presented at trial as to Mr. Valdez’s exposure to coal- *403 tar epoxy, which the evidence shows is a carcinogen. Michael McGhee, a former coworker of Mr. Valdez who was also suffering from lung cancer, testified that he had worked with Mr. Valdez at Pen Gulf applying coal-tar epoxy on a steel bridge for about two weeks. However, Pen Gulf submitted daily reports indicating that Mr. Valdez never worked directly with the coal-tar epoxy or in the area where coal-tar epoxy was being applied. These reports also showed that the coal-tar epoxy was used only over a four-day period on the bridge project. The evidence also established that factors other than the coal-tar epoxy possibly contributed to his contracting lung cancer. These factors include genetic predisposition, tobacco and marijuana smoking, exposure to asbestos, and exposure to other chemical agents associated with spraying paint.
The trial court stated in its findings of fact that “[ejvidence was in conflict about the alleged exposure to coal-tar epoxies and the Court, without making a determination of that issue concludes that even if Plaintiffs evidence was believable as to that issue, that evidence failed to reasonably satisfy the Court that such exposure was a direct cause of Employee’s terminal illness.” (Emphasis added.) The trial court stated that “asbestos exposure and cigarette smoking alone could account for Employee’s cancer and death,” and then concluded that “the claimed hazard of Employee’s employment did not directly or proximately cause his death and further, that Employee’s disease and death were not the direct result of exposure over a period of time to the normal working conditions of his employment.” (Emphasis added.)
The Court of Civil Appeals, in its opinion affirming the trial court’s denial of benefits, quoted Dr. Martin Perlman, Mr. Valdez’s treating physician, and the only medical expert to testify, as saying that Mr. Valdez “had a multitude of carcinogens acting on him,” and that he thought “it’s impossible for anybody to say which one did it.” 636 So.2d at 400. The court did not include in its opinion the next sentence of Dr. Perlman’s testimony, in which Dr. Perlman stated, “I think they all worked together in concert.” Dr. Perlman had also testified that there were “several contributing factors” to Mr. Valdez’s lung cancer. The Court of Civil Appeals concluded that the trial court did not err “in finding that [Mrs.] Valdez failed to meet the burden of proving that the decedent’s lung cancer and resulting death arose out of and in the course of his employment and resulted from the nature of his employment.” 636 So.2d at 401.
It appears to us that both the trial court and the Court of Civil Appeals stated and applied an erroneous standard in reaching the ultimate conclusion. The standard is not whether “such exposure was a direct and proximate cause of Employee’s terminal illness,” as stated by the trial court, but whether such exposure was a contributing cause of the employee’s illness and resultant death. Whether the employee’s exposure to asbestos and cigarette smoke “alone could account for Employee’s cancer and death” is too narrowly focused as the test for concluding that the employee’s cancer was not job-related. A standard by which the court determines whether other nonoceupational factors could have been sufficient to cause the illness omits the statutory test of whether the occupationally related risks contributed, along with nonoecupationally related risks, to cause the employee’s illness and death. See Arthur Larson, The Law of Workmen’s Compensation § 41.64(c) (1991) (“It is not necessary that the employment conditions be the sole cause, or dominant cause, so long as they are a contributing cause.” (emphasis in original)).
With respect to the statutory requisite of medical causation, we recognize that this case, involving cancer as the cause of the employee’s death, is substantially different from those cases in which the disease or illness is indigenous to the workplace environment. For example, an employee who has been diagnosed as having contracted the disease of byssinosis might be able to meet the medical causation test merely by the further proof that he had a significant exposure to the hazards of cotton dust. See, e.g., Dan River Mills, Inc. v. Foshee, 365 So.2d 1232, 1236 (Ala.Civ.App.1979) (“byssinosis is caused by the inhalation of cotton dust generally”). Likewise, an underground ore min *404 er, with the disease of pneumoconiosis, could probably meet the causation requisite merely by proving the presence of the disease and the exposure to the hazards of ore dust. See, e.g., Black Diamond Coal Mining Co. v. Wilson, 274 Ala. 220, 147 So.2d 810 (1962) (holding that employee was entitled to benefits for disability caused by pneumoconiosis contracted while employed as a miner). In each of these examples, the disease is indigenous to the employee’s occupation.
Cancer, on the other hand, may be caused by many factors, occupational and nonoccupational. Professor Larson, in his treatise, in a section entitled “Proving occupational causation in cancer, bronchitis, and similar cases involving smoking,” states that “[a]s in the heart cases, proof of industrial causation in occupational disease-smoking cases has two components — the legal and the medical.” In cases such as the one before us, which involves cancer, the claimant bears a heavier burden of proof with respect to medical causation than either of the two employees in the above examples. See Arthur Larson, The Law of Workmen’s Compensation § 41.64(c) (1991) (stating that cancer “warrants a brief separate examination” to show that “the disease was an occupational disease, not an ordinary disease of life,” because cancer is “very commonly produced without any occupational contribution”). Recovery in this case is dependent upon the plaintiffs’ proof that the totality of the employee’s work environment as a painter and sandblaster contributed to cause his cancer and thereby his death. Now that we have established the legal principles that must apply, we state why we must reverse the judgment and remand the cause.
This Court has established a two-step standard of review in workers’ compensation cases: “Initially, the reviewing court will look to see if there is any legal evidence to support the trial court’s findings. If such evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court’s judgment.” Ex parte Eastwood Foods, Inc., 575 So.2d 91, 93 (Ala.1991). “[Wjhen the trial court’s finding is meager or omissive, this court will look to the evidence to see if the judgment can be upheld.” Thompson & Co. Contractors v. Cole, 391 So.2d 1042, 1045 (Ala.Civ.App.1980). In this case, however, there is no finding of fact, not even a meager or omissive finding, as to whether Mr. Valdez was exposed to the coal-tar epoxy. Of course, it is not proper in workers’ compensation cases for this Court to “consider the weight of the evidence” and to make findings of fact where the trial court has failed or refused to do so. Hall v. Teledyne Firth Sterling, 448 So.2d 395, 395-96 (Ala.Civ.App.1984).
In workers’ compensation cases, the trial court “is required to make findings of fact and conclusions of law, and these findings should encompass each and every issue presented to and litigated in the trial court; where this is not done, the judgment should be reversed.” Thompson & Co. Contractors v. Cole, 391 So.2d at 1045. Whether Mr. Valdez was exposed to coal-tar epoxy and, if so, the amount of his exposure, were litigated issues on which the trial court should have made findings of fact. These findings of fact are essential to the determination of medical causation. If the court found that there was no exposure, there would be no need to reach the causation issue. However, if the court found that the decedent was exposed, then a question of fact would be presented as to medical causation, for example, whether the exposure was substantial enough to be a factor contributing to the decedent’s lung cancer.
“To establish medical causation the employee must show that the ... exposure to conditions was, in fact, a contributing cause of [the employee’s] injury.” Ex parte Price, 555 So.2d 1060, 1062 (Ala.1989) (quoting Fordham v. Southern Phenix Textiles, Inc., 387 So.2d 204, 205 (Ala.Civ.App.), cert. denied, 387 So.2d 206 (Ala.1980)). See also Mitchell v. Robinson Foundry, Inc., 603 So.2d 1048, 1050 (Ala.Civ.App.1992); Patterson v. Clarke County Motors, Inc., 551 So.2d 412, 415 (Ala.Civ.App.1989); Russell Coal Co. v. Williams, 550 So.2d 1007, 1011 (Ala.Civ.App.1989); Stebbins Engineering & Manufacturing Co. v. Tullis, 505 So.2d 1230, 1231 (Ala.Civ.App.1986). The trial court and the *405 Court of Civil Appeals appear to have required a showing that the coal-tar epoxy was a direct cause or the only cause of Mr. Valdez’s cancer. This is clearly not the standard for showing medical causation. To establish medical causation, the plaintiff need not show that the hazard was the sole cause of the employee’s condition, but rather that the hazard was a “contributing cause” of the injury. Id. A hazard can be a contributing cause if it is one of multiple factors acting in concert to bring about the occupational disease. See Arthur Larson, The Law of Workmen’s Compensation § 41.64(e) (1991) (“Preexisting disease or other predisposition does not prevent compensability. The employer takes the worker as he finds him. It is not necessary that the employment conditions be the sole cause, or dominant cause, so long as they are a contributing cause.” (emphasis in original)). See, e.g., Bolger v. Chris Anderson Roofing Co., 112 N.J.Super. 383, 394, 271 A.2d 451, 458 (Essex County Ct.Law Div.1970) (“Factually, the Court must also find from the evidence that whether the smoking contributed to the end result or not, petitioner’s exposure to pitch, tar and asphalt contributed in a major way to the onset or precipitation of the lung cancer.”), aff'd, 117 N.J.Super. 497, 285 A.2d 228 (N.J.Super.Ct.App.Div.1971).
A mere showing of exposure, however, will not necessarily compel a finding in favor of the plaintiffs on the issue of medical causation. The plaintiffs argue that the trial court improperly required a showing of “excessive” exposure, and they argue that they are not required to show any particular degree of exposure. It is unclear whether the trial court required a showing of “excessive” exposure. Regardless, a showing of excessive exposure is not required, but neither is it sufficient to show mere exposure without evidence of a significant amount of exposure. The plaintiffs must show that Mr. Valdez was exposed to a sufficient amount of coal-tar epoxy to considerably increase the risk of developing cancer. Professor Larson states:
“Even in the ease of unusual chemicals and fumes, however, the quantitative factor cannot be ignored. There should be some evidence of the exposure level necessary to cause increased risk. Extremely small amounts of some agents increase the risk of carcinoma considerably. For other agents, only exposures due to large quantities are known to produce carcinoma.... Further, as in other types of injury, the injury to a certain extent is dose related, with some threshold amount necessary to cause any injury. Without a threshold, almost every cancer could be related to occupational injury.”
Arthur Larson, The Law of Workmen’s Compensation § 41.61(c) (1991). Therefore, if the trial court determines that Mr. Valdez was exposed to the coal-tar epoxy, it must then determine the amount to which he was exposed and whether this amount was sufficient to increase his risk so that it is more likely than not that the coal-tar epoxy exposure contributed to Mr. Valdez’s lung cancer.
“[A]t least three factors must be considered when assessing the likelihood that a person was harmed by exposure to an agent.... The first is the existence of a hazard, that is, the potential health effect. The second is the exposure the person received, and the third is the level of risk associated with that exposure.”
Kenneth R. Foster, David E. Bernstein, and Peter W. Huber, A Scientific Perspective, in Phantom Risk: Scientific Inference and the Law 1, 3 (Kenneth R. Foster et al. eds., 1993).
Because the trial court failed to make the required findings of fact and apparently applied the wrong standard for determining medical causation, we reverse the judgment and remand this case; the Court of Civil Appeals shall have the trial court determine, according to the standards set out in this opinion, whether Mr. Valdez was exposed to the coal-tar epoxy and, if he was, then how much exposure he had and whether the exposure was a factor contributing to his lung cancer.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
SHORES, J., concurs specially.